<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NASSIR GRIMSLEY,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　Respondent. | Civil Action No. 22-7207 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

　　Before the Court is Petitioner Nassir Grimsley's ("Petitioner") motion to vacate, set aside, or correct his sentence ("Motion") pursuant to 28 U.S.C. § 2255. (ECF No. 1.) Following an order to answer, the Government filed a response to the Motion. (ECF No. 6.) Petitioner filed a reply. (ECF No. 10.) For the reasons set forth below and for good cause having been shown, Petitioner's § 2255 Motion is **DENIED** and a certificate of appealability will not issue.

**I.　BACKGROUND**

　　On July 31, 2020, Petitioner was charged by complaint with one count of conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (Crim. No. 21-312, ECF No. 1.) On August 6, 2020, at Petitioner's initial appearance, the Court appointed Attorney Gary Mizzone to represent Petitioner. (*Id.*, ECF No. 26.) On April 14, 2021, the grand jury for the District of New Jersey, sitting in Newark, returned an Indictment, charging Petitioner with the following counts: (1) conspiracy to distribute controlled substances, 21 U.S.C. § 846 (Count One); (2) possession with intent to distribute heroin and cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Two); (3) possession with intent to distribute heroin, 21 U.S.C. §§ 841(a)(1)

and (b)(1)(C) (Count Three); (4) possession with intent to distribute heroin, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Four); (5) possession with intent to distribute heroin, 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count Five); and (6) possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i) (Count Six). (*Id.*, ECF No. 41.)

On September 15, 2021, Petitioner was charged by superseding information with the following six counts: (1) conspiracy to distribute controlled substances[1], 21 U.S.C. § 846 (Count One); (2) possession with intent to distribute heroin and cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Two); (3) possession with intent to distribute heroin, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Three); (4) possession with intent to distribute heroin, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Four); (5) possession with intent to distribute heroin and fentanyl, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Five); and (6) possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i) (Count Six). (*Id.*, ECF No. 48.) On the same day, Petitioner waived his right to prosecution by indictment and consented to proceeding by superseding information. (*Id.*, ECF No. 49.)

The Presentence Investigation Report summarized the events that led to the filing of charges against Petitioner as follows:

> In June 2019, law enforcement began investigating members and associates of the 793 set of the Bloods street gang who distributed narcotics and committed acts of violence around Avon Avenue and South 19th Street in Newark, New Jersey.
>
> The FBI's investigation revealed that Dickerson, [Petitioner], and Jones all sold narcotics within the area of the FBI's investigational

---

[1] Relevant here, in Count One, the superseding information charged Petitioner did knowingly and intentionally conspire and agree with others to distribute and possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, a quantity of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance. (*Id.*, ECF No. 48 at 1.)

focus, primarily around Avon Avenue and South 19th Street in Newark.

On June 12, 2019, law enforcement conducted surveillance around Avon Avenue and South 19th Street, during which time law enforcement observed Dickerson and Jones engage in several hand-to-hand transactions. Specifically, law enforcement observed Dickerson and Jones accept cash in exchange for items retrieved from both Dickerson's waistband and Jones's bag. After observing several transactions, law enforcement approached Purchaser-1 who had just engaged in a hand-to-hand exchange with Dickerson and Jones. Upon observing law enforcement, Purchaser-1 dropped four glassine envelopes of heroin and one jug1 of cocaine base from his right hand.

Law enforcement subsequently approached Dickerson and Jones. During a search incident to their arrests, law enforcement recovered 42 glassine envelopes of heroin and 22 jugs of cocaine base from Dickerson's waistband. Dickerson also possessed $371 in cash. Law enforcement recovered 15 pills (substance unknown) and $1,705 in cash from Jones.

On September 27, 2019, law enforcement conducted surveillance around Avon Avenue and South 19th Street, during which time law enforcement observed Dickerson and three co-conspirators engage in several hand-to-hand transactions. Law enforcement observed Dickerson move a green Pringles can from one garbage can to another. Shortly thereafter, following a brief conversation with Purchaser-2, Dickerson retrieved an item from the green Pringles can and handed that item to Purchaser-2 in exchange for money. Law enforcement also observed Dickerson, amid several hand-to-hand transactions, enter and exit a black 2014 Chrysler, registered in his name, with the green Pringles can.

Law enforcement subsequently approached Dickerson and the three co-conspirators. Law enforcement retrieved the green Pringles can, which had been discarded, and recovered 20 glassine envelopes of heroin and 19 jugs of cocaine base from it. Following a search conducted incident to Dickerson's arrest, law enforcement recovered two cell phones and $138 in cash from Dickerson. Cumulatively, the three co-conspirators possessed five cell phones and $2,007 in cash.

Law enforcement subsequently obtained a search warrant for the Chrysler. Execution of that search warrant revealed, among other

3

items, ten glassine envelopes of heroin, $2,028 in cash, and Dickerson's identification.

Following his arrest, Dickerson was detained in the Essex County Correctional Facility from September 27, 2019 until April 2, 2020. During that time, law enforcement learned through lawfully intercepted recorded communications that Dickerson continued directing and managing drug sales, primarily through communications with Jones.

During the week of January 27, 2020, law enforcement utilized a confidential source (CS) to conduct a controlled purchase of heroin and cocaine base. The CS contacted Jones and ordered approximately four bricks of heroin. Jones directed the CS to meet her associate to complete the purchase. Thereafter, the CS met [Petitioner] who provided the CS with approximately 200 glassine envelopes of heroin and 24 clips2 of cocaine base.

During the week of February 24, 2020, law enforcement utilized the CS to conduct a controlled purchase of heroin. The CS contacted Jones and ordered approximately two bricks of heroin. Jones directed the CS to meet her associate to complete the purchase. Thereafter, the CS met [Petitioner] who provided the CS with approximately 100 glassine envelopes of heroin.

During the week of March 2, 2020, law enforcement again utilized the CS to conduct a controlled purchase of heroin. The CS contacted Jones and ordered approximately two bricks of heroin. Jones directed the CS to meet her associate to complete the purchase. Thereafter, the CS met [Petitioner] who provided the CS with approximately 100 glassine envelopes of heroin.

During the week of July 27, 2020, law enforcement utilized the CS to conduct a controlled purchase of heroin. The CS contacted Dickerson and ordered approximately five bricks of heroin. Thereafter, the CS met Dickerson who provided the CS with approximately 250 glassine envelopes of heroin.

Criminal Complaint No. 20-10263 was filed on July 31, 2020. Dickerson, Jones, and [Petitioner] were arrested federally on August 6, 2020 in connection with the instant offense.

On August 6, 2020, agents also executed a search of Dickerson and Jones's shared home. That search revealed 11 bricks of heroin and $30,000 in cash in a freezer, among other items. At the time of his

> arrest, [Petitioner] was found in possession of approximately 120 bricks of heroin and a firearm.
>
> Based on laboratory reports, [Petitioner] is responsible for 1.973 grams of crack cocaine and 83.53 grams of a mixture of heroin and fentanyl.
>
> The probation office has not received any reports regarding the operability of the gun seized from [Petitioner] or whether it had been reported stolen. Should that information be received, it will be incorporated into the final presentence report.

(Presentence Investigation Report ("PSR") at ¶¶ 27–43.)

On February 24, 2022, pursuant to a negotiated Plea Agreement, Petitioner pled guilty before the Honorable Kevin McNulty, U.S.D.J. (ret.) ("Judge McNulty"), to the six-count superseding information. (Crim. No. 21-312, ECF Nos. 52, 58.) Pursuant to the Plea Agreement, the parties agreed that, should the Court accept the Plea Agreement, a sentence between 6- and 7-years' imprisonment was reasonable in light of the factors set forth in 18 U.S.C. § 3553. (*Id.*, ECF No. 52.)

Prior to sentencing, the U.S. Probation Office determined an advisory guidelines range of 37 to 46 months, plus 60 months on Count 6, based on the six-count superseding indictment, Petitioner's total offense level of 21, and a criminal history category of I. (PSR at ¶¶ 64–74, 78, 108.) On February 24, 2022, in accordance with the terms of the Plea Agreement, Judge McNulty sentenced Petitioner to a total term of 72 months' imprisonment. (Crim. No. 21-312, ECF No. 60.)

On December 8, 2022, Petitioner filed his § 2255 Motion arguing ineffective assistance of plea counsel because counsel (1) failed to raise Petitioner's Speedy Trial Act rights; (2) failed to "investigate and move for suppression of the firearm" that was located in Petitioner's apartment; and (3) recommended Petitioner accept the plea agreement which contained a charge that he "possessed with intent to distribute fentanyl." (ECF No. 1 at 4-7.) Petitioner also raises a claim of

prosecutorial misconduct, arguing that the government coerced him to accept a plea agreement that related to charges for possession with intent to distribute a mixture or substance containing a detectable amount of the controlled substance fentanyl. (*Id.* at 8.)

## II. LEGAL STANDARD

### A. 28 U.S.C. § 2255

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides in relevant part that:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458–59 (D.N.J. 2003). A district court must hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255(b); *see also United States v. Booth*, 432 F.3d 542, 545–46 (3d Cir. 2005).

### B. Ineffective Assistance of Counsel

The United States Supreme Court has set forth a two-part test by which courts must evaluate claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner must show that "counsel's performance was deficient," which means that

"counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Specifically, counsel's performance is deficient if his representation falls "below an objective standard of reasonableness." *Id.* at 688. In examining the question of deficiency, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As such, "the petitioner bears the burden of showing that counsel's challenged action was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

Next, Petitioner must show that the deficient performance prejudiced her. *Strickland*, 466 U.S. at 687. Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Where, as here, the petitioner entered into a guilty plea, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

With respect to the sequence of the two prongs, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Instead, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*; *see also Rainey v. Varner*, 603 F.3d 189, 201 (3d. Cir. 2010).

## III. DECISION

Petitioner claims that he received ineffective assistance from his plea counsel, Attorney Mizzone. (*See* ECF No. 1.) Specifically, Petitioner argues counsel (1) failed to raise Petitioner's

7

Speedy Trial Act rights; (2) failed to "investigate and move for suppression of the firearm" that was located in Petitioner's apartment; and (3) recommended Petitioner accept the plea agreement which contained a charge that he "possessed with intent to distribute fentanyl." (ECF No. 1 at 4–7.) Petitioner also raises a claim of prosecutorial misconduct, arguing that the government coerced him to accept a plea agreement that related to charges for possession with intent to distribute a mixture or substance containing a detectable amount of the controlled substance fentanyl. (*Id.* at 8.)

The established test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Where a defendant is represented by counsel and enters a guilty plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

The Supreme Court held in *Hill* that a claim of ineffective assistance of counsel in the context of a guilty plea is subject to the same standard of attorney competence set forth in the first prong of the *Strickland* test. 474 U.S. at 58–59. However, the *Hill* Court specifically held that where the collateral challenge is to a plea of guilty rather than a trial verdict, the "prejudice" prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Petitioner cannot show that there is a reasonable probability that "but for" Attorney Mizzone's alleged ineffectiveness, Petitioner would not have pleaded guilty and would have insisted on going to trial.

### A. Speedy Trial Act Rights

Petitioner argues that plea counsel was ineffective for failing to move for dismissal of the charges against Petitioner based on a violation of his speedy trial rights. (ECF No. 1 at 24–25.) Petitioner argues that the Court issued four "*nunc pro tunc* Standing Orders" that delayed the filing of an indictment charging Petitioner for "approximately 210 days after [Petitioner's] arrest on the complaint." (*Id.* at 24.) Petitioner claims that because *nunc pro tunc* continuances have been invalidated by the Third Circuit Court of Appeal, plea counsel should have moved for dismissal of the charges against Petitioner. (*Id.* at 25.)

The Speedy Trial Act, 18 U.S.C. §§ 3161–3174, generally requires a trial to begin within seventy days "from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). The defendant's first appearance before a judicial officer for purposes of section 3161(c)(1) "must be an arraignment to trigger the 70-day period." *United States v. Willaman*, 437 F.3d 354, 357 (3d Cir. 2006) (reasoning that § 3161(c)(1), "by its terms, is applicable only in a 'case in which a plea of not guilty is entered' and until the arraignment there could not have been a plea").

However, "the Act recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases. To provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start." *Zedner v. United States*, 547 U.S. 489, 497 (2006). Section 3161(h) excludes, in relevant part, from the speedy trial clock:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his

9

> counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A). For time to be excludable under this section, the court must set forth, "in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.* It is not necessary, however, for the court to articulate facts which are obvious and are set forth in the motion for the continuance. *See United States v. Lattany*, 982 F.2d 866, 879 (3d Cir. 1992). In determining whether to grant a continuance, the court must consider, inter alia, "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." 18 U.S.C. § 3161(h)(7)(B)(i).

Here, in March 2020, the coronavirus pandemic caused the need of ends of justice continuances in criminal matters throughout this country. Petitioner was charged by complaint on July 31, 2020 and was arrested on August 6, 2020. (Crim. No. 21-312, ECF Nos. 1 and 24.) Following Petitioner's arrest on August 6, 2020, the speedy trial clock was tolled on four separate occasions from August 17, 2020 until June 1, 2021, pursuant to ends of justice continuance orders. (*Id.*, ECF Nos. 6, 35, 37, 40.) Petitioner argues that these continuances were inappropriately filed *nunc pro tunc*. However, the Court has reviewed the end of justice continuance orders and finds none of the continuance orders were *nunc pro tunc*. (*See id.*) Notwithstanding the speedy trial clock being tolled through June 1, 2021, Petitioner was indicted on April 14, 2021. (*Id.*, ECF No. 41.) In accordance with 18 U.S.C. § 3161(h)(7)(A), each of the Standing Orders issued by the Chief Judge of this District made explicit findings and stated the reasons for the findings that the ends of justice served by granting each continuance outweighed the best interest of the public and

the Defendants in a speedy trial. All the time tolled from the Speedy Trial Act by the ends of justice continuances was properly excluded. *See* 18 U.S.C. § 3161(h)(7). Plea counsel was not ineffective for choosing not to move for dismissal of Petitioner's charges based on a meritless speedy trial violation argument. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (finding counsel "cannot be deemed ineffective for failing to raise a meritless claim.") Therefore, Petitioner's § 2255 Motion is denied as to this claim.

### B. Suppression Motion- Firearm

Petitioner next argues plea counsel was ineffective for failing to file a motion to suppress the drugs and firearm. (ECF No. 1 at 21-22.) Petitioner claims that plea counsel should have moved to suppress the drugs and firearm because they were found "after his arrest and out of his presence." (*Id.* at 22.) Petitioner argues only that plea counsel should have moved to suppress the evidence because the search was performed out of Petitioner's presence.

"Effective assistance does not require counsel to file every possible motion, including suppression motions—only those with a 'solid foundation.'" *United States v. Bristol*, No. 18-375, 2022 WL 2068048, at *6 (E.D. Pa. June 8, 2022) (quoting *United States v. Swinehart*, 617 F.2d 336, 341 (3d Cir. 1980)). To demonstrate prejudice, the petitioner must show he likely would have prevailed on the suppression motion and that, after prevailing, there is a reasonable probability he would not have been convicted (including through a guilty plea). *Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir. 2005); *see also Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (finding that, to demonstrate prejudice, "the defendant must [] prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence").

11

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." *Bailey v. U.S.*, 568 U.S. 186, 192 (2013) (quoting U.S. Const. amend. IV.) Generally, a seizure is reasonable under the Fourth Amendment "'only if based on probable cause' to believe that the individual has committed a crime." *Id.* (quoting *Dunaway v. New York*, 442 U.S. 200, 213 (1979)).

A court must give "great deference to the magistrate judge's probable cause determination" in analyzing a challenge to a probable cause determination underlying a warrant. *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001). "A magistrate judge properly finds probable cause when, considering the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[A]s long as there is a substantial basis for a fair probability that evidence will be found[,]" a warrant must be upheld. *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993).

Respondent submits that the evidence at issue was seized pursuant to a search warrant authorized by the Honorable Edward S. Kiel, U.S.M.J. (*See* ECF No. 6 at 10.) The affidavit in support of the search warrant explained that law enforcement observed in plain view several hundred decks of suspected heroin packaged for distribution when they were lawfully present in Petitioner's residence to effectuate the arrest warrant. (ECF No. 12-1 at 90.) Petitioner fails to raise an argument that the search warrant was not supported by probable cause. Rather, Petitioner argues only that the evidence should have been suppressed because he was not present at the time the search warrant was executed. Petitioner offers no legal argument, nor is the Court aware of any, to support his assertion that he needed to be present during the execution of the search warrant.

Petitioner has not demonstrated that he had a viable motion to suppress the drugs or firearm evidence, as he does not argue that the search warrant was invalid. Thus, he has not established that counsel rendered deficient performance by failing to discover the alleged invalid warrant or failing to move to suppress the firearms evidence. *See U.S. v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."). As Petitioner has not demonstrated that he would have prevailed on the motion, he has not demonstrated prejudice. *See Thomas*, 428 F.3d at 502. Accordingly, Petitioner is not entitled to habeas relief and this claim is denied.

### C. Failure to Investigate- Fentanyl

Petitioner next claims that plea counsel was ineffective for failing to investigate. Petitioner argues had counsel investigated, he would have realized that the grand jury had not indicted Petitioner on charges involving fentanyl. (ECF No. 1 at 20–22.) Petitioner argues if plea counsel had discovered that Petitioner was not indicted on charges involving fentanyl, he would not have recommended that Petitioner waive his right to prosecution by indictment and accept the plea offer. (*Id.* at 20-21, 22–23.)

"For a failure to investigate to constitute ineffective assistance, a defendant must show what exculpatory evidence would have been uncovered by further investigation." *United States v. Franklin*, 213 F. Supp. 2d 478, 488 (E.D. Pa. 2002) (citation omitted). At a minimum, "a defendant must show that the investigation would have 'produced useful information not already known to trial counsel.'" *Id.* (citing *Lewis v. Mazurkiewicz*, 915 F.2d 106, 115 (3d Cir. 1990)) (additional citations omitted). Here, Petitioner appears to argue that had plea counsel investigated the fentanyl charge, he would have uncovered the grand jury had not indicted Petitioner on a charge that included the controlled substance fentanyl. (*See* ECF No. 1 at 20–21.) However, the laboratory

13

report provided by the government shows that the results which determined the controlled substances that were recovered from Petitioner's residence contained fentanyl were not available until after the grand jury returned the indictment. (ECF No. 12-1 at 122–28.) After the filing of the indictment and the return of the laboratory results, the government filed a superseding information, charging Petitioner with counts consistent with the laboratory findings. (Crim. No. 21-312, ECF No. 48.) Petitioner then waived his right to prosecution by indictment and consented to proceeding by superseding information. (*Id.*, ECF No. 49.) As the laboratory report shows the substances recovered from Petitioner's residence contained fentanyl and the government filed a superseding information charging Petitioner's with counts related to the fentanyl, Petitioner has failed to show any exculpatory evidence that his counsel could have uncovered by further investigation. Additionally, plea counsel was aware of the indictment, the superseding information, and the addition of the fentanyl charges. Any claim that Petitioner's waiver of prosecution by indictment and plea were involuntary and unknowing based on counsel's failure to investigate further is meritless. Petitioner cannot say that "but for" counsel's failure to further investigate the indictment, the laboratory results, and the superseding information, he would not have waived prosecution by indictment and would not have pled guilty pursuant to the plea agreement. *Hill*, 474 U.S. at 58–59. Thus, Petitioner has failed to establish this claim of ineffective assistance of counsel, and it is dismissed.

### D. Defective Superseding Information

Petitioner argues a defect in the superseding information should have resulted in the dismissal of Count Six. (ECF No. 1 at 23.)

As Petitioner correctly points out, there was a typographical error in the superseding indictment. Count Six of the superseding indictment reads as follows:

**COUNT SIX**
(Possession of a Firearm in Furtherance of a Drug Trafficking Crime)

On or about August 6, 2020, in Essex County, in the District of New Jersey and elsewhere, the defendant,
**NASSIR GRIMSLEY,**
a/k/a "Chop,"

in furtherance of a drug trafficking crime for which the defendant may be prosecuted in a court of the United States, namely, possession with intent to distribute heroin, as charged in Count Five of this *Indictment*, did knowingly possess a firearm, namely, one KelTec P3AT .380 caliber handgun, with an obliterated serial number, which was loaded with five rounds of .380 caliber ammunition.

In violation of Title 18, United States Code, Section 92a(c)(1)(A)(i).

(Crim. No. 21-312, ECF No. 48 (emphasis added).) Count Six indicates that the possession of a firearm in furtherance of a drug trafficking crime charge relates to "Count Five of this Indictment." (*Id.*) As the charging document was the superseding information, the use of the word Indictment in that sentence is clearly a typographical error.

This ground for habeas relief fails under the first *Strickland* prong because plea counsel cannot be faulted for failing to raise a meritless argument, *see Werts*, 228 F.3d at 203, and the contention that the indictment was defective is meritless. "Generally, a motion to vacate a judgment of conviction and sentence under Section 2255, 28 U.S.C, is a collateral proceeding which cannot be utilized to question the sufficiency of an indictment, unless the indictment is so defective on its face as not to charge an offense under any reasonable construction." *Scott v. United States*, 231 F. Supp. 360, 362 (D.N.J. 1964).

> An indictment is "sufficient if, when considered in its entirety, it adequately informs the defendant of the charges against [him] such that [he] may prepare a defense and invoke the double jeopardy clause when appropriate." A two part test is used "to measure the

15

> sufficiency of an indictment: '(1) whether the indictment contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"

*United States v. Clausen*, 2005 WL 846198 at *9 (E.D. Pa. Apr. 12, 2005) (citations omitted). "[A]n indictment should be upheld 'unless it is so defective that it does not, by any reasonable construction, charge an offense.'" *See United States v. Advantage Med. Transp., Inc.*, 751 F. App'x 258, 262 (3d Cir. 2018) (quoting *United States v. Willis*, 844 F.3d 155, 162 (3d Cir. 2016.)) Here, examination of the superseding information in its entirety reveals that it is constitutionally sufficient. The Court finds that the error in the superseding information was a typographical error and the document fairly informed Petitioner of the charges against him. The error did not render the superseding information so obviously defective that it did not, by any reasonable construction, charge Petitioner with an offense. Plea counsel cannot be found ineffective for failing to raise this meritless claim. Petitioner's § 2255 Motion is dismissed as to this issue.

### E. Prosecutorial Misconduct

In his final claim, Petitioner argues prosecutorial misconduct. (ECF No. 1 at 8.) Petitioner claims that the government acted in "bad faith by coercing [Petitioner] into a plea agreement" on charges pertaining to the possession with intent to distribute fentanyl, when the criminal complaint and indictment did not charge Petitioner with fentanyl related charges. (*Id.*)

As an initial matter, this claim is procedurally defaulted. A § 2255 motion cannot be used as a substitute for a direct appeal. *See Gov't of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1074 (3d Cir. 1985). A habeas petitioner is typically barred from collaterally attacking his conviction or sentence using issues that could have been brought on appeal but were not. *Muhammad v. United States*, No. 20-15606, 2022 WL 445623, at *3 (D.N.J. Feb. 14, 2022) (citing *United States v.*

*Frady*, 456 U.S. 152, 162–63 (1982)). Petitioner could have raised this claim on direct appeal, and he did not. He may not raise it now unless he can show cause and prejudice or that he is actually innocent. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (quotations omitted). Petitioner offers no evidence that he is actually innocent. And he cannot establish cause and prejudice. Nothing in his Motion shows that "some external impediment" prevented counsel from raising this claim, so there is no cause. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Nor is there prejudice. To demonstrate actual prejudice, Petitioner would need to show that a constitutional violation "worked to his actual and substantial disadvantage." *Shinn v. Ramirez*, 596 U.S. 366, 379–80 (2022) (quotation omitted). As explained above, the superseding information, which was filed after the laboratory results showing the substances contained fentanyl, charged Petitioner with possession with intent to distribute fentanyl. Thus, there was no constitutional violation and, even if Petitioner could show cause and prejudice, his underlying claim is without merit. Therefore, Petitioner's § 2255 Motion is dismissed as to this claim and in its entirety.

**IV.     CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason could not disagree with this Court's conclusion, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and no certificate of appealability shall issue.

## V. CONCLUSION

For the reasons stated above and for good cause having been shown, Petitioner's motion to vacate sentence (ECF No. 1) is **DENIED** and Petitioner is **DENIED** a certificate of appealability. An appropriate order follows.

Date: April 14, 2025

*/s/ Brian R. Martinotti*
HON. BRIAN R. MARTINOTTI
UNITED STATES DISTRICT JUDGE